UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-24692-CIV-ALTONAGA/Goodman

**ALANA MARIE SOUZA**, *et al.*,

    Plaintiffs,
v.

**NOWHERE BOTTLE AND
SOCIAL CLUB, INC.**,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court on Plaintiffs, Alana Marie Souza, Brenda Lynn Geiger, Brooke Johnson Taylor, Claudia Sampedro, Emily Scott, Jessica Burciaga, Jessica Hinton, and Rosa Acosta's Amended Motion for Final Default Judgment [ECF No. 17], filed February 12, 2020. Plaintiffs seek entry of a default final judgment pursuant to Federal Rule of Civil Procedure 55(b) against Defendant, Nowhere Bottle and Social Club, Inc. for misappropriating Plaintiffs' images and using them in Defendant's advertisements online without authorization. (*See generally* Mot.). Plaintiffs request the Court: (1) award damages against Defendant; (2) compensate Plaintiffs for their costs in bringing this action; and (3) order Defendant to complete a Florida Rule of Civil Procedure Form 1.977 Fact Information Sheet. (*See generally id.*). Notwithstanding proper service of the Complaint [ECF Nos. 1, 5], Defendant has elected not to participate in this case, and a Clerk's Default [ECF No. 9] was entered. The Court has carefully considered the Motion, the record, and applicable law.

1

CASE NO. 19-24692-CIV-ALTONAGA/Goodman

## I. BACKGROUND[1]

Each Plaintiff is a professional model who earns a living by promoting her image and likeness to select clients, commercial brands, media and entertainment outlets, as well as relying on her reputation and own brand for modeling, acting, hosting, and other opportunities. (*See* Compl. ¶ 31). Plaintiffs "seek to control the use and dissemination of their images and, thus, actively participate in vetting and selecting modeling, acting, brand spokesperson, or hosting engagements." (*Id*. ¶ 37). By way of introduction:

- Alana Marie Souza a/k/a Alana Campos is a Brazilian model who began her modeling career at the age of 15. She was scouted by the director of Ford Models and worked as a model with the agency for five years. She moved to the United States at age 20, where she currently resides and is represented by Wilhelmina Models. Ms. Campos has been published in magazines such as *Playboy*, *Astonish*, *Viva Glam*, *Bliss*, and has appeared as a spokesmodel for *My Body Journey* and as a cover girl for *Arizona Foothills* magazine. She has also appeared in many campaigns such as Arden B, Target, Chynna Dolls, Frederick's of Hollywood, ICollection, Elegant Moments, Drift Eyewear, Sexy Dresses, Sachika, Marisa Kenson, and Sports Calendar. She was featured in the movie "Last Vegas" with Robert DeNiro, Morgan Freeman, and Michael Douglas.

- Brooke Johnson Taylor is a world-renowned model who has appeared in magazines such as *FHM*, *Maxim*, *Viva Glam* and *Stuff*. She has also appeared in commercials and billboards such as Fredrick's of Hollywood, Coors Light, and Budweiser. In addition, Ms. Taylor has also been featured in countless other catalogs, billboards, television commercials and shows.

- Claudia Sampedro is a Cuban-born model, mother and spokeswoman. She moved to Miami, Florida when she was 6 years old and at 16 was discovered by Elite Models. Ms. Sampedro has appeared in many catalogues, and magazine editorials; and she has several cover credits for magazines such as *Nine 5 Four*, *Shock*, *Face to Face* and *Mixed*. Ms. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. She is a top Social Media Influencer with over a million Facebook followers and a further combined half a million fans on Facebook and Twitter. Currently, Ms. Sampedro is engaged to and has a child with Green Bay's star defensive end, Julius Peppers.

- Emily Scott is an Australian DJ and model based in Sydney and London. She has been

---

[1] The factual background is taken from the Complaint, the Motion, and supporting Declarations submitted by Plaintiffs.

voted by multiple magazines in the United States, United Kingdom, and Australia as one of the world's sexiest women. Scott has graced the cover of more than 30 magazines such as *Maxim*, *FHM*, and *Playboy* in Europe; and she has appeared in campaigns such as Wonderbra and Lipton Iced Tea. Ms. Scott was featured in Robbie Williams's show visuals to support his worldwide Rock DJ tour and also appeared in an episode for Season 4 of the hit show "Entourage." Ms. Scott has also been selected to be a contestant on "Dancing With The Stars"(Australia), "I'm A Celebrity Get Me Out Of Here" (UK), "Cirque Du Celebrity" (UK) and "Love Island" (UK). She kicked off her DJ career with her first tour in 2008. Since then, Ms. Scott has played support slots for legendary House DJ Erick Morillo and Defected's Sam Divine; and she has performed at festivals alongside Deadmau5, Tommy Sunshine and Skrillex. Ms. Scott has mixed high profile compilations for major record labels such as EMI and headlined tours in many countries around the world.

- Jessica Burciaga is a successful model and business owner. She is of Mexican, French, and Irish descent. Her modeling career began in 2005 when she submitted modeling photos to *Stuff Magazine*. In turn, the magazine flew her to New York where she posed for the first modeling photoshoot of her career and ultimately won *Stuff Magazine's* "Neighborhood Knockout" contest. The prize earned from her first successful modeling venture was $5,000, a 4-page spread in the magazine and an appearance as a "ring girl" in EA Sports Fight Night Round 3 video game. Since then, Ms. Burciaga's career has continued to thrive, leading to appearances in various magazines including: *Playboy*, *Maxim*, *Import Tuner*, *Modified Mag*, *Performance Auto & Sound*, *Show Latina*, *Lowrider Magazine*, and many others. Ms. Burciaga was named the February 2009 *Playboy* "Playmate of the Month" and has appeared as herself in several episodes of the reality TV series "The Girls Next Door." Most recently, she has been focusing on various business ventures such as a women's online clothing boutique, www.SailorandSaint.com. Ms. Burciaga's social media reach has surpassed 1.6 million Instagram followers, over 49 thousand Facebook followers, and over 192 thousand followers on Twitter.

- Jessica Hinton a/k/a Jessa Hinton started modeling when she was just 14 years old when she was discovered by a talent manager at a wedding. She booked three national TV commercials and guest appeared on "Baywatch" and "7th Heaven" by the age of 16. At the age of 18, she began working runway shows and doing print campaigns. In 2010, Ms. Hinton became the face of the Palms Hotel & Casino's 2010 ad campaign. She then expanded to TV personality roles having hosted for Victory Poker, and as an interview personality for the Top Rank Boxing interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, she was selected *Playboy* "Playmate of the Month" for July, becoming one of the most popular Playmates of that year. She was the center piece of an ad campaign for Milwaukee's Best Beer in conjunction with Playboy Enterprises. Ms. Hinton also attained roles as a spokesmodel for Affliction Clothing, Enzo, Milano Hair Products, REVIV Wellness Spa, and Protein World. She has ongoing modeling contracts with Rhonda Shear Shapewear, Leg Avenue, and Roma Costume; in addition to hosting a Los Angeles, CA television station KTLA. Her images have appeared on billboards, magazines, posters, and multiple media outlets. Ms. Hinton has been a

3

> featured front cover model gaining attraction for popular magazines such as *FHM*, *Kandy*, *MMA Sports*, *Guitar World*, and *Muscle & Fitness*. She was also named Creative Director for MAJR Media and was given part ownership for her role with the company. Ms. Hinton has successfully accomplished elite status as a social media celebrity with a fan-based following of over 1.1 million on Instagram, over 2.8 million on Facebook, and over 255 thousand followers on Twitter.
>
> - Rosa Acosta is a Dominican classical ballet dancer, model and actress. Ms. Acosta started her classic ballet studies at the age of four at the Centro de la Cultura in Santiago, Dominican Republic. Ms. Acosta later moved on to the Institute of Arts where she excelled as one of the most gifted students of the academy. After graduating with honors from the ICA and the Ballet School of Norma Garcia with a Bachelor in Art with a mention to Classic Ballet, she became part of the Dominican Nacional Ballet as the youngest soloist member in 2002. Partaking in all major classic and modern shows in the Dominican Republic, she was nominated twice by the Secretaria de Estado de la Juventud for her work in the category of Cultural Development. Ms. Acosta initiated her modeling career in 2004, appearing in magazines and television for prestigious Dominican enterprises. Ms. Acosta moved to the United States in 2006 and has since built a career featuring in magazines such as *Show*, *King*, *Black Lingerie*, and *Maxim*; and on radio and TV programs, commercials, and numerous music videos. She was the face of Nine5 Eyewear and shot with Terry Richardson for *Supreme* magazine. Ms. Acosta has also developed her brand into a small empire with fragrances, clothing, fitness and a physical store. She currently has over 5 million social media followers.

(*See* Decl. of Stephen Chamberlin [ECF No. 17-5] 6–14).

Defendant was a swing club known as "Deenies Hideaway;" Defendant operated its business at 5011 West Hillsboro Boulevard, in Coconut Creek, Florida. (*See* Compl. ¶¶ 23–24). Defendant utilized a Facebook account to promote its events and parties. (*See id.* ¶ 26).

Plaintiffs' claims arise from Defendant's promotional materials for events and specials at Defendant's business. (*See generally id.*). Defendant used Plaintiffs' images, likenesses, and identities to advertise its club, without the professional engagement and compensation standard in the modeling industry. (*See generally id.*). For example, Defendant used an image of Plaintiff Brooke Johnson Taylor to promote Defendant's "Valentine's Pool Party" event and to entice the public to visit its swing club. The image also advertised a "Sexy Valentine Grilled Lunch" without (1) consulting Plaintiff Taylor so she, or her appropriate representative, could decide whether to

accept the opportunity, and (2) payment to Plaintiff Taylor for using her image and influence. (*See id.* ¶¶ 70–77).

Plaintiffs allege Defendant's conduct creates the false and misleading appearance and impression that each Plaintiff either works for Defendant; has appeared and participated or will appear and participate in activities or events at Defendant's swing club; and/or has agreed and consented to advertise, promote, market or endorse Defendant's swing club or one or more of Defendant's events or activities. (*See id.* ¶ 40). This is problematic, Plaintiffs contend, because the valuation of a model's services is based on the product, service, or other venture a model chooses to promote. (*See id.*).

Each of the eight Plaintiffs brings the same five claims against Defendant: two counts of violating the Lanham Act, 15 U.S.C. section 1125(a), through false advertising and false endorsement; one count of violating a statutory right of publicity under section 540.08, Florida Statutes, through unauthorized misappropriation of name/likeness; one count of violating the common law right of publicity through unauthorized misappropriation of name/likeness; one count of conversion; and one count of unjust enrichment. (*See generally* Compl.). The Court will address each claim in turn.

Plaintiffs request that the Court (1) enter default judgment against Defendant; (2) award Plaintiffs damages totaling $485,000.00; (3) award Plaintiffs their costs (in the amount of $720.00); and (4) enter an order pursuant to Federal Rule of Civil Procedure 69 requiring Defendant to complete a Florida Rule of Civil Procedure Form 1.977 Fact Information Sheet, and all necessary attachments, within 45 days from the date of judgment.

## II. LEGAL STANDARD FOR DEFAULT JUDGMENT

Rule 55 authorizes the Court to enter a default judgment against a party who has failed to plead in response to a complaint. Fed. R. Civ. P. 55(b). When considering whether the moving party is entitled to a default judgment, "a court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Taylor v. Frank Stewart Trucking, Inc.*, No. 08-14009-Civ, 2008 WL 4753355, at *2 (S.D. Fla. Oct. 27, 2008) (citing *Tyco Fire & Sec. LLC v. Alcocer,* 218 F. App'x 860, 863 (11th Cir. 2007)). The Eleventh Circuit has interpreted "a sufficient basis" as "being akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (citing *Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim.")). In other words, "a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." *Id.* (citing *Wooten v. McDonald Transit Assocs., Inc.,* 775 F.3d 689, 695 (5th Cir. 2015)).

The Court may take into account affidavits and such other evidence as it deems necessary. Fed R. Civ. P. 55(a). Further, "The [C]ourt may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." *Id.* (b)(2) (alterations added).

## III. ANALYSIS

**A.     Claims**

<u>False Advertising under the Lanham Act</u>

Plaintiffs allege false advertising in that Defendant used their images or likenesses to "create the perception that . . . [they] worked at or [were] otherwise affiliated with" Defendant's swing club. (Compl. ¶ 150 (alterations added)). To make a prima facie showing of false advertising, Plaintiffs must plead that "(1) the defendant's statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) it has been, or likely will be, injured as a result of the false or misleading statement." *Lancaster v. Bottle Club, LLC*, No. 8:17-cv-634, 2017 WL 3008434, at *4 (M.D. Fla. July 14, 2017) (quoting *Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of Knights Hospitallers of Sovereign Order of Saint John of Jerusalem, Knights of Malta, Ecumenical Order*, 702 F.3d 1279, 1294 (11th Cir. 2012)). Courts in cases with substantially similar allegations have found — even over defendants' objections — false advertising to be sufficiently pleaded to survive a motion to dismiss. *See, e.g.*, *Gibson v. White's Place, LLC*, No. 3:16-cv-392, 2017 WL 4169690, at *2 (M.D. Fla. Sept. 20, 2017); *Bottle Club, LLC*, 2017 WL 3008434, at *5; *Krupa v. Platinum Plus, LLC*, No. 8:16-cv-3189, 2017 WL 1050222, at *4 (M.D. Fla. Mar. 20, 2017). Given the functionally identical standard in the Eleventh Circuit for a motion to dismiss and a motion for default judgment, the Court concludes there is a sufficient basis for relief.

<u>False Endorsement under the Lanham Act</u>

Plaintiffs allege false endorsement in that Defendant used Plaintiffs' images "to create the false impression with the public that [Plaintiffs] either worked at . . . or endorsed" Defendant's business. (Compl. ¶ 165 (alterations added)). To make a prima facie showing of trademark

7

infringement or false endorsement,[2] a plaintiff "must show (1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Krupa*, 2017 WL 1050222, at *5 (quoting *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012)). The same courts cited above found false endorsement to be validly alleged when plaintiffs — as here— relied on their images or likenesses, their social media followings, their modeling portfolios, and their use of social media advertising. *See, e.g.*, *White's Place, LLC*, 2017 WL 4169690, at *2; *Bottle Club, LLC*, 2017 WL 3008434, at *7; *Krupa*, 2017 WL 1050222, at *6. The Court concludes there is a sufficient basis for relief.

<u>Violation of Section 540.08, Florida Statutes</u>

Plaintiffs bring state statutory claims against Defendant, alleging it violated section 540.08, Florida Statutes, and Plaintiffs' right of publicity. (*See, e.g.*, Compl. ¶¶ 176–87). Section 540.08 prohibits anyone from "publish[ing], print[ing], display[ing] or otherwise publicly us[ing] for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use." Fla. Stat. § 540.08(1) (alterations added). Plaintiffs have clearly stated sufficient facts and supported those allegations with the materials accompanying their Motion, to support a prima facie case under this statute. *See, e.g.*, *White's Place, LLC*, 2017 WL 4169690, at *3; *Krupa*, 2017 WL 1050222, at *6.

<u>Violation of Common Law Right of Publicity</u>

---

[2] The Eleventh Circuit handles trademark infringement and false endorsement claims in the same way. *See Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*, 683 F.3d 1266, 1278 (11th Cir. 2012) ("[W]e have never treated false endorsement and trademark infringement claims as distinct under the Lanham Act." (alteration added)).

Plaintiffs also bring common law right of publicity claims. (*See, e.g.*, Compl. ¶¶ 188-99). Invasion of privacy can be established in four ways: "(1) appropriation — the unauthorized use of a person's name or likeness to obtain some benefit; (2) intrusion — physically or electronically intruding into one's private quarters; (3) public disclosure of private facts — the dissemination of truthful private information which a reasonable person would find objectionable; and (4) false light in the public eye—publication of facts which place a person in a false light even though the facts themselves may not be defamatory." *Krupa*, 2017 WL 1050222, at *7 (quoting *Agency for Health Care Admin. v. Associated Indus. of Fla., Inc.*, 678 So. 2d 1239, 1252 n.20 (Fla. 1996)). As in the cited cases, Plaintiffs here advance their claim under the first theory — appropriation. Again, Plaintiffs have carried their burden. Two other courts concluded the same on substantially similar allegations. *See, e.g.*, *White's Place, LLC*, 2017 WL 4169690, at *3; *Krupa*, 2017 WL 1050222, at *7.

Conversion

Plaintiffs also allege conversion of their property rights in images, likeness and/or identity. (*See, e.g.*, Compl. ¶¶ 200–05). "[I]t is well settled that a conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." *Krupa*, 2017 WL 1050222, at *8 (alteration added; internal quotation marks omitted; quoting *Senfeld v. Bank of Nova Scotia Tr. Co. (Cayman) Ltd.*, 450 So. 2d 1157, 1160–61 (Fla. 3d DCA 1984)). "[T]he essence of conversion is not the possession of property by the wrongdoer, but rather such possession in conjunction with a present intent on the part of the wrongdoer to deprive the person entitled to possession of the property, which intent may be . . . shown by demand and refusal." *Id.* (alteration in original; quoting *Senfeld*, 450 So. 2d at 1161). As the court in *Krupa* explained with regard to

9

substantially similar allegations, even the tersely stated facts in the Complaint, when read as a whole, state a plausible prima facie case for conversion.

### Unjust Enrichment

And finally, Plaintiffs have alleged a claim for unjust enrichment. (*See, e.g.*, Compl. ¶¶ 206–211). An unjust enrichment claim has three elements: "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP*, 137 So. 3d 1081, 1094 (Fla. 3d DCA 2014) (internal quotation marks and citation omitted). "While each specific claim for unjust enrichment . . . alleges, in a terse fashion, facts bordering on legal conclusions, the Complaint, when read as whole, alleges enough facts to give rise to a plausible claim to relief for unjust enrichment . . . ." *Krupa,* 2017 WL 1050222, at *8 (alterations added); *see also White's Place, LLC*, 2017 WL 4169690, at *4. Therefore, Plaintiffs have established a valid claim for unjust enrichment.

**B.    Liability**

The well-pleaded factual allegations of Plaintiffs' Complaint properly contain the elements for each of the above claims and are admitted by virtue of Defendant's default. Moreover, the Complaint's factual allegations have been substantiated by sworn declarations and other evidence and establish Defendant's liability for each of the claims asserted. Accordingly, default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure is appropriately entered against Defendant.

**C.    Relief**

### Damages

After liability is established, the Court must ascertain the terms of the judgment, including the amount of damages. Although a defaulted defendant is deemed to have admitted well-pleaded allegations of fact as to liability, the Court must determine the "amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999) (citation omitted); *see also Ensley v. Gene's Wrecker Service, Inc.*, No. 3:16-cv-713, 2019 WL 339630, at *1 (N.D. Fla. Jan. 27, 2019) ("[E]ven in the context of a default judgment, a court has an obligation to assure that there is a legitimate basis for any damage award it enters." (alteration added)). The plaintiff has the burden of proving entitlement to and the amount of damages. *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008). The Court may consider affidavits and such other evidence as it deems necessary. *See* Fed R. Civ. P. 55(a). Further, "The [C]ourt may conduct hearings or make referrals . . . when to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." *Id.* (b)(2) (alterations added).

Here, Plaintiffs rely on the expert testimony of Stephen Chamberlin, a model and talent agent with more than 30 years of experience in the modeling industry, to calculate the "fair market value" of the images Defendant misappropriated. (*See* Decl. Stephen Chamberlin; *see also* Expert Report [ECF No. 17-4]). In total, Plaintiffs request the Court award them $485,000 in actual damages. (*See* Expert Report). The Court has "[g]reat latitude" in awarding damages. *Drake v. E. I. DuPont deNemours & Co., Inc.*, 432 F.2d 276, 279 (5th Cir. 1970) (alteration added). This is especially true under section 1117(a) of the Lanham Act, which "vests considerable discretion in the district court." *Burger King Corp. v. Mason*, 710 F.2d 1480, 1495 (11th Cir. 1983); *see also*

11

*Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1157 (7th Cir. 1994) (holding the district court may "award up to three times the damages plaintiff can actually prove").

"Moreover, Lanham Act damages may be awarded even when they are not susceptible to precise calculations[.]" *Ramada Inns, Inc. v. Gadsden Motel Co.,* 804 F.2d 1562, 1565 (11th Cir. 1986) (alteration added); *see also PODS Enters., LLC v. U-Haul Int'l, Inc.*, 126 F. Supp. 3d 1263, 1282 (M.D. Fla. 2015). This is because a "wrong doer may not complain of inexactness where his actions preclude precise computation of the extent of the injury." *Kestenbaum v. Falstaff Brewing Corp.*, 514 F.2d 690, 698 (5th Cir. 1975) (citing *Eastman Kodak Co. v. Southern Photo Co.*, 274 U.S. 359, 379 (1927)).[3]

To calculate Plaintiffs' damages, Mr. Chamberlin reviewed Defendant's promotional materials, spoke with Plaintiffs (and any available agents or managers), researched Plaintiffs' professional backgrounds, and reviewed any obtainable supporting documentation that evidenced Plaintiffs' prior modeling compensation, such as contracts and earnings statements. (*See* Expert Report). Mr. Chamberlin then established separate rates of compensation for the use of each Plaintiff's image in an advertisement ("Advertising"), the advertisement's distribution on Defendant's social media ("Social Media"), any association with a third-party ("Third-Party") and

---

[3] *See also J. Truett Payne Co., Inc. v. Chrysler Motors Corp.*, 451 U.S. 557, 566–67 (1981) (accepting a degree of uncertainty in the calculation of business damages because "it does not come with very good grace for the wrongdoer to insist upon specific and certain proof of the injury which it has itself inflicted" (internal quotation marks and citations omitted)); *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931) ("Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate.").

end extra uses ("Extra"). Mr. Chamberlin's calculations of Plaintiffs' damages are summarized as follows:

**Alana Marie Souza a/k/a Alana Campos**

Image 1
Advertising    $20,000
Social Media   $20,000
Third Party    $20,000

**Total Damages: $60,000**

**Brenda Lynn Geiger**

Image 1
Advertising    $10,000
Social Media   $10,000
Third Party    $10,000

**Total Damages: $30,000**

**Brooke Johnson Taylor**

Image 1
Advertising    $10,000
Social Media   $10,000

**Total Damages: $20,000**

**Claudia Sampedro**

Image 1
Advertising    $15,000
Social Media   $15,000
Third Party    $15,000
            Total: $45,000

Image 2
Advertising    $15,000
Social Media   $15,000
Third Party    $15,000
            Total: $45,000

Image 3
Advertising    $15,000
Social Media   $15,000
            Total: $30,000

Image 4
Advertising    $15,000

13

        Social Media  $15,000
        Third Party   $15,000
            Total: $45,000

**Total Damages: $165,000**

**Emily Scott**

Image 1
Advertising  $15,000
Social Media  $15,000
Extra        $15,000

**Total Damages: $45,000**

**Jessica Burciaga**

Image 1
Advertising  $25,000
Social Media  $25,000
Extra        $25,000

**Total Damages: $75,000**

**Jessica Hinton a/k/a Jessa Hinton**

Image 1
Advertising  $25,000
Social Media  $25,000

**Total Damages: $50,000**

**Rosa Acosta**

Image 1
Advertising  $20,000
Social Media  $20,000

**Total Damages: $40,000**

(*See* Expert Report).

In view of Mr. Chamberlin's written submissions, the Court concludes Plaintiffs are entitled to the requested $485,000 as actual damages under the Lanham Act. Other courts addressing similar misappropriation claims by some of the same Plaintiffs have found Mr. Chamberlin's "fair market value" determination to be an adequate method of calculating damages for a defendant's unauthorized use of the identity or persona of a plaintiff as a human being, not a copyrighted image. *See Moreland v. A-Q-B, LLC*, No. 6-19-cv-372, 2019 WL 6727870, at *3

(W.D. Tex. Dec. 11, 2019); *Taylor v. Trapeze Mgmt., LLC*, No. 0:17-cv-62262, 2019 WL 1977514, at *4–5 (S.D. Fla. Feb. 28, 2019); *Edmondson v. Velvet Lifestyles, LLC*, No. 15-24442-Civ, 2018 WL 6807342, at *3–4 (S.D. Fla. Sept. 24, 2018), *report and recommendation adopted*, 2018 WL 6807314 (Oct. 29, 2018); *Edmondson v. Caliente Resorts, LL*C, No. 8:15-cv-2672, 2017 WL 10591833, at *5 (M.D. Fla. Aug. 31, 2017); *see also Bogart, LLC v. Ashley Furniture Indus., Inc.*, No. 3:10-cv-39, 2012 WL 3745833, at *16–17 (M.D. Ga. Aug. 28, 2012) (crediting an expert's calculation of damages from the misappropriation of a celebrity's publicity rights — the "Bogart" mark — based on a "hypothetical licensing negotiation"). Accordingly, Plaintiffs are entitled to default judgment against Defendant for $485,000 as compensatory damages in the respective amounts assigned to each Plaintiff in the chart above.

Costs

Plaintiffs are entitled to recover "costs of the action" as the prevailing party. 15 U.S.C. § 1117(a); Fed. R. Civ. P. 54(d). Under 28 U.S.C. section 1920, the items that may be taxed as costs include: (1) fees of the Clerk and United States Marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) witness and printing fees; (4) copying costs for materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. section 1923; and (6) compensation for court-appointed experts, interpreters, and the salaries, fees, expenses and costs of special interpretation services under 28 U.S.C. § 1828. *See* 28 U.S.C. § 1920. The Court cannot award costs "in excess of those permitted by Congress under 28 U.S.C. [section] 1920." *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1225 (11th Cir. 2002) (alteration added). Therefore, Plaintiffs' request for an award in taxable costs in the amount of $720.00 is granted.

Post-Judgment Collection

Finally, Plaintiffs request the Court enter an order requiring Defendant to complete a Florida Rule of Civil Procedure Form 1.977 Fact Information Sheet, and all necessary attachments, within 45 days from the date of judgment. Under the Florida Rules of Civil Procedure, a judgment creditor may obtain discovery to aid her execution of a judgment. Fla. R. Civ. P. 1.560(a). Upon request of the judgment creditor, the Court "shall order the judgment debtor or debtors to complete [F]orm 1.977, including all required attachments, within 45 days of the order[.]" Fla. R. Civ. P. 1.560(b) (alterations added).

Importantly, the Florida Rules of Civil Procedure are made applicable here by Federal Rule of Civil Procedure 69, which allows a judgment creditor to "obtain discovery from any person — including the judgment debtor — as provided in [the Federal Rules of Civil Procedure] or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2) (alteration added). Rule 69 effectively gives the judgment creditor "the choice of federal or state discovery procedures to conduct post-judgment discovery." *In re Clerici*, 481 F.3d 1324, 1337 (11th Cir. 2007) (citations omitted). Plaintiffs are therefore entitled to the post-judgment discovery they seek. *See Weatherby Locums, Inc. v. Lower Bucks Pediatrics, P.C.*, No. 19-cv-62478, 2019 WL 6468714, at *2 (S.D. Fla. Dec. 2, 2019); *Microsoft Corp. v. Tech Emporium Enters., Inc.*, No. 1:17-cv-141, 2018 WL 6137199, at *3–4 (N.D. Fla. Jan. 16, 2018); *Am. Home Assurance Co. v. Weaver Aggregate Transp., Inc.*, 298 F.R.D. 692, 693 (M.D. Fla. 2014). Defendant is hereby ordered to complete the Florida Rules of Civil Procedure Form 1.977 Fact Information Sheet, and all necessary attachments, and return a sworn copy to Plaintiffs' counsel within 45 days from the date of judgment.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs are entitled to the entry of final default judgment.

Accordingly, it is

**ORDERED AND ADJUDGED** that Plaintiffs' Amended Motion for Final Default Judgment Against Defendant [**ECF No. 17**] is **GRANTED**. Final judgment shall be entered by separate order. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 27th day of February, 2020.

_____
**CECILIA M. ALTONAGA
UNITED STATES DISTRICT JUDGE**

cc: counsel of record